[GLC 9/4/2025]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEILSTRUP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:24-CV-00585-TMH |
| | ) | |
| G2 GAMING, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Pending before the court is Defendant G2 Gaming's motion to dismiss Counts I–IV of the Meilstrup Plaintiffs' First Amended Complaint with prejudice. Because the Plaintiffs have sufficiently pled the respective claims, we deny G2 Gaming's motion to dismiss.

## I.    **BACKGROUND**[1]

The Plaintiffs, Jay Meilstrup, Yvonne Meilstrup, and Brent Zatezalo, allege that Defendant Greg Carlin solicited Mr. Meilstrup and Mr. Zatezalo to leave their employer, Rush Street Gaming, to start a new gaming company, G2 Gaming LLC. ECF No. 38, ¶¶ 1–4, 15. Mr. Carlin offered Mr. Zatezalo and Mr. Meilstrup a proposal that if they came to G2 and took a 15% reduction in salary and forfeited their bonuses, they would receive 3% equity in G2. *Id.* ¶ 9. Mr. Zatezalo and Mr. Meilstrup accepted and began working at G2. *Id.* ¶ 15. They allege that, over the next two years, they never received any equity or profits from G2 or any documentation of the arrangement. *Id.* Ms. Meilstrup did not agree to the terms of the equity agreement, but she also commenced employment at G2. *Id.* ¶ 20.

Mr. Carlin then approached Mr. Meilstrup to invest in an entity to hold the real estate for the gaming enterprise; Mr. Meilstrup and Ms. Meilstrup then agreed to invest $150,000. *Id.* at ¶¶ 23–24. But they allege Mr. Carlin never provided documentation of their ownership. *Id.* ¶ 25. The Plaintiffs also allege that, after the

---

[1] For purposes of this motion to dismiss, we adopt Plaintiffs' allegations as true. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

gaming enterprise engaged in a number of significant transactions, including obtaining a $42 million line of credit and purchasing an existing casino property for $ 10 million, Mr. Carlin began diverting revenue outside the gaming enterprises to his personal family trust. *Id.* at ¶¶ 26–27.

On January 10, 2024, Mr. Meilstrup sent a demand letter to G2, alleging that these actions were part of a larger fraudulent scheme. *Id.* ¶ 29. The Plaintiffs allege that they would not have left their respective employments and taken a significant reduction in compensation or invested in the gaming enterprise but for the fraudulent promises and representations by Mr. Carlin and G2. *Id.* at ¶¶ 34, 37

On April 1, 2024, Plaintiffs filed this action in Cook County Superior Court in Illinois. ECF 1. Defendants timely removed this case to the U.S. District Court for the Northern District of Illinois on April 15, 2024, based on federal question jurisdiction. *Id.* Defendants then moved to transfer the case to the District of Delaware under § 1404(a), and Plaintiffs consented. ECF 5, 14. The motion to transfer was granted on May 15, 2024.

## II.    LEGAL STANDARD

A defendant may move to dismiss the claims against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere labels, conclusions, or a formulaic recitation of the elements of a cause of action will not

suffice to make a claim plausible. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"[I]n cases alleging securities fraud, Plaintiffs must 'satisfy the heightened pleading rules codified in' the PSLRA." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (quoting *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). "This standard 'requires Plaintiffs to plead the who, what, when, where and how: the first paragraph of a newspaper story.'" *Id.* (quoting *Avaya*, 564 F.3d at 253). The pleading standard falls under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake," but malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

## III.    DISCUSSION

Defendant G2 Gaming moves to dismiss counts I–IV of the Meilstrup Plaintiffs' First Amended Complaint. We consider each count in turn.

### A.    Violation of Rule 10B-5 of the Securities and Exchange Act

Section 10(b) of the Exchange Act authorizes the SEC to regulate securities fraud. 17 C.F.R. § 240. Rule 10b-5 states that "it shall be unlawful for any person to employ any device, scheme or artifice to defraud . . . to make any untrue statement of a material fact or to omit to state a material fact or to engage in any act, practice or

course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

Plaintiffs allege that Mr. Zatezalo and Mr. Meilstrup purchased a security in reliance on the promise made by Mr. Carlin that they would receive an equity stake in the company. ECF 38, ¶ 42. Defendants respond that just because documents regarding ownership were not distributed, that does not show that the equity stake was not distributed. ECF 39, 7. Defendants also argue that there are no allegations about what form the 3% equity stake would take, what value the equity maintained, or if there were any conditions precedent attached to the equity. *Id.* Finally, Defendants argue that Plaintiffs have not alleged scienter with particularity because G2 was not required to issue equity ownership documents or distributions, so there are no facts that would support fraudulent intent. *Id.* at 12.

Defendants rely primarily on *Yash Venture Holdings,* a Seventh Circuit case, that dismissed a securities fraud claim because the terms of the underlying contract were uncertain. *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651 (7th Cir. 2024), *reh'g denied*, No. 23-3200, 2024 WL 4257157 (7th Cir. Sept. 20, 2024). But there, the court held that the terms were uncertain because there was no meeting of the minds required to form a contract because the offer and acceptance did not match, and the securities fraud claim was dismissed because it was premised on an invalid underlying contract. *Id.* at 658. This is a factually distinct situation as there is no disagreement over what the general terms of the agreement between the parties were, and the parties at least partially performed under the agreement since the

plaintiffs accepted reduced salaries and G2 paid them those reduced salaries. We conclude that plaintiffs have met the pleading standards required at this stage and deny the motion to dismiss as to this count.

B.    Fraudulent Inducement

Claims for fraudulent inducement are also subject to the pleading standard under FRCP 9(b). The elements of the claim are "(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance." *Accelerant Twister, LLC v. Marjo*, LLC, No. CV 22-1366-RGA, 2023 WL 4457422, at *4 (D. Del. July 11, 2023).

Defendants primarily argue that this claim should be dismissed for many of the same reasons as Count I. *See* ECF 39, 14. Here, we also conclude that Plaintiffs have alleged enough to meet the pleading standard required at this stage because they have sufficiently alleged the "who, what, where, why, and how" of the claim.

C.    Breach of Contract

Plaintiffs allege two breach of contract claims. First, that Mr. Carlin and G2 violated their fiduciary duties by diverting partnership funds from the gaming enterprise to Mr. Carlin's own personal family trust account without notice or disclosure to the partners. ECF 38, ¶ 67. Second, that Mr. Meilstrup and Ms. Meilstrup were not provided with distribution payments or a limited partnership

agreement until after commencement of the litigation with respect to their $150,000 investment. ECF 38, ¶ 67.

Defendants argue that Plaintiffs do not point to anything in the alleged contract that would explain how the diversion of funds would be prohibited conduct. ECF 39, 18. Defendants also argue that there is no language in the partnership agreement or subscription agreement that obligates Defendants to issue distributions or deliver relevant tax documents. ECF 39, 16. Plaintiffs respond that, even if there are no express contract provisions, Defendants have violated the implied duty of good faith and fair dealing under Delaware contract law. *Limitless Coffee, LLC v. Mott's, LLP*, 2024 Del. Super. LEXIS 639, at *6 (Super. Ct. Sep. 19, 2024). Plaintiffs also allege that they were not provided with copies of any of the agreements until the litigation was commenced, and that Defendants have not responded to their books and records requests, which would allow Plaintiffs to determine whether profits were available to distribute. ECF 38, ¶ 67. We find that Plaintiffs' allegations are sufficiently plausible to meet the pleasing standard at this stage.

## IV.    CONCLUSION

Because Plaintiffs have adequately pled the claims, we deny Defendants' motion to dismiss.